FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 02, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DANIELLE CHARLOTTE L., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 2:18-CV-00166-JTR <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 16. Attorney Rosemary B. Schurman represents Danielle Charlotte L. (Plaintiff); Special Assistant United States Attorney Jeffrey Eric Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On March 25, 2014, Plaintiff filed an application for Supplemental Security Income benefits. Tr. 13, 175-83, 242. Plaintiff alleged a disability onset date of June 28, 2009, Tr. 13, 57, 193, 197, due to Wrist, Arm, Elbow, Snapped Wrist Out, Double-Jointed but Hyper Extended and Snapped, Could Not Get PT and Trouble Using Arm, Constant Pain, Non-Epileptic Seizures – Diagnosis, Anxiety,

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Depression, ADHD, Eating Disorder, Referred to Emory Program, and Get Overwhelmed Very Easily. Tr. 197. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Caroline Siderius held a hearing on December 20, 2016, Tr. 29-56, and issued an unfavorable decision on April 5, 2017. Tr. 13-23. The Appeals Council denied review on May 2, 2018. Tr. 1-6. The ALJ's April 5, 2017, decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 22, 2018. ECF No. 1, 4.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on June 28, 1992 and was 21 years old on the date the application was filed, March 25, 2014. Tr. 57, 175. She has a high school education. Tr. 44, 66. She testified that she was in 12th grade for three years because she moved a lot, went to 16 different schools, and did not do well in school. Tr. 44. However, she reported to a medical provider that she graduated at age 19 due to moving around a lot. Tr. 296. She testified that she considered going to college but did not go mainly because of her anxiety. Tr. 45. Plaintiff's only past employment was as a cashier at a craft store from October 2010 to November 2010, and as a member of the cleaning crew at a stadium from December 2010 to January 2011. Tr. 234.

Plaintiff testified that she never obtained her driver's license because she did not have the time when she was 16, and then she started having seizures. Tr. 45. She testified that, although she did not go to a doctor for her seizures, she understood that she could not risk other peoples' lives by driving. Tr. 45. She

testified that she was thinking of getting a driver's permit because she may be able to get a license after six months without seizures. Tr. 45.

Plaintiff testified that she is unable to work because "pretty much everything" she does causes physical pain, and she is terrified of people. Tr. 46. Plaintiff testified that she generally has to get up and walk around about every 30 minutes when she is sitting. Tr. 47. She testified that her back, hips, and legs hurt when she is standing. Tr. 47. She said that she usually gets into a laying down position while watching television or cross-stitching. Tr. 47. She testified that she has had anxiety since she was a teenager, but it became a lot worse when she was 18. Tr. 48. She testified that she does not do well with confrontation and gets scared. Tr. 46. She testified that, although it had been recommended that she receive mental health counseling, she had "been lazy about that," but did call someone about mental health counseling the week before the administrative hearing. Tr. 45-46.

She testified that she wants to work because she thinks it would be better for her to go out and do things, but she cannot think of anything she could do because she is unable to sit or stand for very long, and unable to lift things. Tr. 46. Plaintiff testified that she wanted to become a veterinarian tech and her dream job was to work at a zoo, but she is unable to lift much so she "most likely can't do that." Tr. 42. She has thought about working as a receptionist because she would not have to lift anything, but she was not sure if she could sit long enough to do that type of a job. Tr. 47.

Plaintiff lives with her mother and her grandmother. Tr. 44. She testified that she watches television, plays video games, and has one friend online. Tr. 40-42. She also spends time painting and cross-stitching, although she testified that it hurts to paint and cross-stitch. Tr. 40, 42-43; *see* Tr. 40 ("It does hurt, but it's at least productive"); Tr. 40 ("[cross-stitch] hurts while I'm doing it, but, you know, I want to get it done by Christmas for my sister"); Tr. 43 ("it's uncomfortable

painting for more than about 10, 20 minutes, but I still push through it when I do it, so I mean I might be able to try an Internet program at a college to help with that"). Plaintiff testified that she shovels snow from her driveway, although she "pretty much sleep[s] the whole next day" because she is in so much pain. Tr. 40-41. She testified that she goes shopping or to the grocery store with her mother or grandmother. Tr. 47. She testified that she and her boyfriend would socialize "[a] bit" with friends, but that was always a little difficult. Tr. 48.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On April 5, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, March 25, 2014. Tr. 15.

At step two, the ALJ determined Plaintiff had the following severe impairments: Ehler Danlos Syndrome (EDS), depression, and anxiety. Tr. 15.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 17.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined that she could perform light work, but with the following limitations: she can lift 20 pounds occasionally and 10 pounds frequently; she can sit up to eight hours a day, stand and walk up to six hours a day with the ability to change

position once an hour; she cannot climb ladders, ropes, or scaffolds, or work at unprotected heights; she would need to avoid working with heavy machinery or equipment; she could occasionally crawl; she could frequently but not constantly handle, grasp, and grip with both hands; she is capable of superficial brief contact with the general public and coworkers; she would work better with things rather than people; she could do simple, routine, and repetitive tasks with only occasional changes in work duties or in the work setting. Tr. 18.

At step four, the ALJ determined Plaintiff had no past relevant work. Tr. 22.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, and based on the testimony of the vocational expert (VE), Plaintiff could perform other jobs present in significant numbers in the national economy, including the light exertion level jobs of mail clerk, small parts assembler, and office cleaner I. Tr. 22-23. The ALJ thus concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act since March 25, 2014, the date the application was filed. Tr. 23.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) improperly finding that Plaintiff's seizure disorder was not severe at step two; (2) failing to properly formulate an RFC that considered all of Plaintiff's limitations, which the Court construes as assigning error in considering and weighing the medical source opinion evidence; and (3) failing to properly evaluate the vocational expert's testimony at step five. ECF No. 14 at 6, 10, 15.

**DISCUSSION**[1]

---

[1] In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United

ORDER GRANTING DEFENDANT'S MOTION . . . - 6

A. Step Two

Plaintiff argues the ALJ erred at step two of the sequential evaluation process by failing to identify her seizure disorder as a severe impairment. ECF No. 14 at 5-10.

Plaintiff has the burden of proving she has a severe impairment at step two of the sequential evaluation process. 20 C.F.R. § 416.912. In order to meet this burden, Plaintiff must furnish medical and other evidence to show her impairment is severe. 20 C.F.R. § 416.912(a). The regulations provide that an impairment is severe if it significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). "Basic work activities" are defined as the abilities and aptitudes necessary to do most jobs. 20 C.F.R. § 416.922(b).

Step two is "a *de minimis* screening device [used] to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when this conclusion is "clearly established by medical evidence." SSR 85-28; *see Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). Applying the normal standard of review to the requirements of step two, the Court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Plaintiff did not have a severe impairment. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate

---

States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

courts have imposed a narrow construction upon the severity regulation applied here."); *Webb*, 433 F.3d at 687.

Here, the ALJ determined Plaintiff had the severe impairments of Ehler Danlos syndrome, depression, and anxiety. Tr. 15. However, the ALJ concluded that Plaintiff's non-epileptic seizures were imposing no more than a minimal limitation upon her ability to perform work-related activities and thus, her seizure disorder was not a severe impairment. Tr. 17. Specifically, the ALJ noted that Plaintiff's EEGs were negative other than one non-epileptic event consistent with pseudoseizures, and that Plaintiff's reports of seizure activity varied from provider to provider. Tr. 17 (citing Tr. 276, 295, 350, 357, 361). The ALJ indicated that there was no evidence of witnessed seizures or documentation of more than one of these seizures that would result in any work-related limitations, despite Plaintiff's statements that she had experienced these seizures since she was 14 years old.[2] Tr. 17. The ALJ also noted that Plaintiff reported fewer seizures with medication. Tr. 17 (citing Tr. 375). The ALJ reasonably concluded that this evidence showed

---

[2] Plaintiff argues that the ALJ made a mistake by stating that there was no evidence of witnessed seizures. ECF No. 14 at 8-9, Tr. 17. Plaintiff notes, and the record shows, that Plaintiff's roommate accompanied her to an appointment at Columbia Medical Associates on May 7, 2013, where he reported that Plaintiff may have had a seizure two days earlier. Tr. 257. Plaintiff contends "the ALJ's attempt to infer that the seizures are nonexistent is unsupported by the evidence." ECF No. 14 at 8-9. However, the ALJ stated that there was no evidence of witnessed seizures or documentation of more than one of these seizures "that would result in any work-related limitations." Tr. 17. It does not appear that the ALJ is attempting to infer that the seizures are nonexistent, but rather to state that there is no evidence that her seizure disorder would result in any work-related limitations. Tr. 17.

ORDER GRANTING DEFENDANT'S MOTION . . . - 8

Plaintiff's seizure disorder caused no more than a minimal limitation on Plaintiff's ability to perform basic work-related tasks. Tr. 16-17.

Plaintiff contends the evidence that satisfies her burden to prove a severe impairment includes documentation of one pseudoseizure, a diagnosis of non-epileptic seizures, and the prescription of an anti-seizure medication. ECF No. 14 at 7. However, a diagnosis alone does not establish the existence of a severe impairment and Plaintiff fails to identify how her non-epileptic seizures had more than a slight functional impact. *See Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985); 20 C.F.R. § 416.921. Plaintiff also argues that no physician has ever disputed the existence of her seizures or found that she is malingering. ECF No. 14 at 9. This argument is misplaced, as step two requires Plaintiff to present medical and other evidence to show that her impairment is severe, rather than simply point out that no one disputes the claimed impairment. 20 C.F.R. § 416.912(a).

Plaintiff asserts that her seizure disorder is a severe impairment because Nurse Holstein opined that the combined effects of her seizure disorder, Ehler Danlos syndrome, post-traumatic stress disorder, and depression with anxiety would result in Plaintiff being absent from work five days a month, unable to complete an eight-hour workday for five days a month, able to perform sustained work activities for less than 50 percent of the time, and "off-task" more than 30 percent of the time. ECF No. 14 at 9-10. As discussed *infra*, the ALJ gave no weight to this portion of Nurse Holstein's opinion, noting that Nurse Holstein stated the most significant clinical findings and objective signs were subjective. Tr. 21, 336. The ALJ also determined that mental status examinations contained minimal objective findings to support Nurse Holstein's limitations. Tr. 21 (citing 342, 253, 268, 266, 263, 261, 284, 291, 293, 299-300, 307, 323, 327-28, 332, 363, 352, 359). Nurse Holstein's opinion does not establish Plaintiff's seizure disorder as a severe impairment.

Even if the failure to list her seizure disorder as severe was error, the error would be harmless because step two was resolved in Plaintiff's favor, and Plaintiff fails to identify any credited limitation associated with non-epileptic seizures that was not considered by the ALJ and incorporated into the RFC at step four. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). The ALJ's step two finding is legally sufficient.

**B.     Medical Source Opinions**

Plaintiff argues that the ALJ's RFC was based upon a legally deficient assessment of the medical opinions. ECF No. 14 at 15. Specifically, Plaintiff asserts the ALJ erred by rejecting without comment the treating nurse's opinions about the combined effect of physical and mental impairments, and instead relying on the opinions of the nonexamining state agency physician and psychologist. ECF No. 14 at 13-15.

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians), and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830; *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding a nonexamining doctor's opinion "with nothing more" does not constitute substantial evidence).

In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must also set forth the reasoning behind his or her decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. § 416.927. "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. § 416.913(d) (2013).[3] However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

---

[3] Prior to March 27, 2017, the definition of a medical source, as well as the requirement that an ALJ consider evidence from non-acceptable medical sources, were located at 20 C.F.R. § 416.913(d).

### 1. State Reviewers – Dr. Hale and Dr. Nelson

In October 2014, state agency medical consultant Dr. Hale and state agency psychological consultant Dr. Nelson reviewed the record and opined Plaintiff was capable of less than the full range of light exertion, including frequent handling, fingering, and environmental limits, and was capable of a 40-hour work week with work that was simple and routine with no more than superficial interaction with supervisors, coworkers, and the general public. Tr. 21, 69-80.

The ALJ gave great weight to the opinions of both doctors. Tr. 21-22. The ALJ noted that state agency medical and psychological consultants are highly qualified and experts in disability evaluation. Tr. 22. The ALJ stated that, although records were received subsequent to their opinions, the only opinion evidence was from Nurse Holstein, and the physical portion of her opinion, to which the ALJ assigned some weight, generally agreed with that of Dr. Hale. Tr. 20-22. The ALJ stated that there were no other mental health treatment records to contradict Dr. Nelson's opinion, and Plaintiff's mental status examinations were not indicative of any significant cognitive or social problems. Tr. 22 (citing 352, 359, 363).

Plaintiff argues the ALJ should have credited the opinion of Plaintiff's treating nurse over the opinions of the reviewing doctors. However, as discussed *infra*, the ALJ provided legally sufficient reasons for giving less weight to Nurse Holstein and for giving more weight to the reviewing doctors' opinions.

### 2. Treating Nurse Practitioner – Nurse Holstein

Nurse Holstein began treating Plaintiff in September 2016 and completed a residual functional capacity statement after Plaintiff's second visit in November 2016. Tr. 20 (citing Tr. 336-38). Nurse Holstein reported Plaintiff was limited to a wide range of light exertion, with frequent lift and carry of up to 15 pounds and occasional of 20 pounds or more. Tr. 20, 339. Plaintiff could climb ramps or stairs, but not ladders, ropes, or scaffolds; could sit for about eight hours in an

eight-hour workday; and could stand and walk for about four hours in an eight-hour workday for 30-60 minutes at one time. Tr. 20, 337-39. The ALJ assigned some weight to the physical portion of Nurse Holstein's opinion set forth in the residual functional capacity statement. Tr. 20-21.

Nurse Holstein does not qualify as an acceptable medical source. 20 C.F.R. § 416.902[4] (Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). An ALJ is required to consider evidence from non-acceptable medical sources. 20 C.F.R. § 416.927(f).[5] An ALJ must give reasons "germane" to each source in order to discount evidence from non-acceptable medical sources. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Here, while the ALJ noted that the physical portion of Nurse Holstein's opinion was generally supported by the opinion of the state agency medical consultant, the ALJ also highlighted some inconsistencies between Nurse Holstein's physical examination and other medical evidence in the record. Tr. 21. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th 2005). The ALJ stated that a physical examination done by Nurse Holstein on October 10, 2016 was notable for poor posture and poor strength, laxity in all joints with stress testing, hypermobility in all joints, and low tone. Tr. 20-21 (citing Tr. 342-43). However, the ALJ identified medical evidence in the record that supported a less

---

[4] Prior to March 27, 2017, the definition of an acceptable medical source was located at 20 C.F.R. § 416.913.

[5] Prior to March 27, 2017, the requirement that an ALJ consider evidence from non-acceptable medical sources was located at 20 C.F.R. § 416.913(d).

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

restrictive finding than Nurse Holstein opined. Tr. 21; *see, e.g.*, Tr. 251-52, 282-84, 290-91(Plaintiff's physical exams showed no ongoing weakness or sensation loss), Tr. 349 (hypermobility noted at her elbow, thumb, and pinky, and mild scoliosis but normal sensation), Tr. 352 (good range of motion in Plaintiff's hips, no particular joint tenderness, normal sensation, intact motor function without weakness, intact skin, slight laxity with ankles), Tr. 356 (no focal neurologic deficits, normal sensation, reflexes, coordination, muscle strength and tone). This was a germane reason to discredit Nurse Holstein's opinions as to Plaintiff's physical limitations.

Nurse Holstein provided an opinion on more than Plaintiff's physical limitations. She also opined in the residual functional capacity statement from November 2016 that stress would interfere with Plaintiff's attention and concentration for simple work tasks occasionally; Plaintiff would be limited from loud noises and temperature extremes; would be expected to be off task more than 30% of a workday; would be unable to complete an eight-hour workday five days or more per month; would perform a job eight hours per day, five days per week at less than 50% efficiency; would need to lie down and/or recline during the day three hours at one time due to stress; and needed to take unscheduled breaks three times per week for one to two hours at a time. Tr. 21 (citing Tr. 336-38). The ALJ accorded no weight to the non-physical portion of Nurse Holstein's opinion set forth in the residual functional capacity statement. Tr. 21.

First, the ALJ discredited this portion of the opinion due to Nurse Holstein's admission that the most significant clinical findings and objective signs were subjective. Tr. 21. A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the

alleged symptoms, however, Plaintiff's assertion of total disability under the Social Security Act was not supported by the weight of the evidence. Tr. 19. Plaintiff does not dispute the ALJ's credibility determination. A review of Nurse Holstein's treatment notes shows the notes largely contain Plaintiff's self-reports, and little to no objective observation. Tr. 334-35. Further, Nurse Holstein reported in her treatment notes on November 7, 2016 that "again, I do not know this [patient], but will continue to follow up to ensure needs are being met." Tr. 335. Because the ALJ provided legally sufficient reasons to discredit Plaintiff's symptom complaints, Nurse Holstein's reliance on Plaintiff's subjective symptom complaints was a germane reason to discredit Nurse Holstein's opinion.

Second, the ALJ stated that mental status examinations contained in the record showed minimal objective findings to support Nurse Holstein's limitations. Tr. 21. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218. The ALJ cited numerous examples of inconsistencies between Nurse Holstein's opinion and the medical evidence. Tr. 21; *see, e.g.*, Tr. 253 (not anxious or fidgety), Tr. 268 (appeared nervous and fidgety, but was alert and oriented), Tr. 266 (appeared slightly anxious, but within normal limits), Tr. 263 (seemed nervous, anxious), Tr. 261 (Plaintiff reports medication is finally "kicking in" and she feels much improved with depression and anxiety), Tr. 284 (alert and oriented, no unusual anxiety or evidence of depression), Tr. 291 (good eye contact, normal speech, appropriate affect, logical, dressed appropriately with good hygiene), Tr. 293 (self-perception is realistic, thought processes logical, content unremarkable, no suicidal or homicidal ideation), Tr. 299-300 (appropriate appearance, unremarkable behavior, unremarkable psychomotor behaviors, appropriate speech and affect, euthymic mood, intact memory, clear consciousness, average intellect, cooperative, good reasoning, impulse control, judgment, and insight, logical thought processes), Tr. 307 (alert and oriented, no unusual anxiety or evidence of depression, good eye

contact, affect appropriate, logical, dressed appropriately with good hygiene, interacting well with significant other, behavior "very comfortable"), Tr. 323 (alert and oriented, no unusual anxiety or evidence of depression, pleasant, cooperative, good eye contact, appropriate affect), Tr. 327-28 (oriented, cooperative, appropriate speech, euthymic mood, intact memory, average intellect, fair reasoning, impulse control, judgment, insight), Tr. 332 (cooperative, good eye contact, judgment and insight good, no acute distress, despite reporting significant PTSD symptoms), Tr. 363 (alert and oriented, good fluency, comprehension, concentration, memory, and knowledge), Tr. 352, 359 (alert and cooperative, normal mood and affect, normal attention span and concentration). This was a germane reason to discredit Nurse Holstein's opinion.

Third, the ALJ noted that Nurse Holstein's own mental status examination was normal. Tr. 21 (citing Tr. 334-35). An ALJ may reject opinions that are internally inconsistent. *Nguyen*, 100 F.3d at 1464. An ALJ is not obligated to credit medical opinions that are unsupported by the medical source's own data and/or contradicted by the opinions of other examining medical sources. *Tommasetti*, 533 F.3d at 1041. A review of Nurse Holstein's treatment notes from Plaintiff's mental status examination reveal that Plaintiff was "pleasant, polite, thought content without suicidal ideation, delusions, alert, oriented, cognitive function intact, cooperative with exam, good eye contact, judgment, and insight impaired in regards to her declining to address PTSD." Tr. 335. Nurse Holstein also reported that Plaintiff's thought process was logical and goal directed. Tr. 335. The inconsistencies between her opinion and her own treatment notes was a germane reason to discredit Nurse Holstein's opinion.

Having reviewed the ALJ's evaluation of the medical evidence, the Court finds the ALJ's interpretation was based on substantial evidence, and the ALJ properly supported the findings with germane reasons.

## C. Step Five

Plaintiff challenges the ALJ's evaluation of the vocational expert's testimony at step five. ECF No. 14 at 15-17.

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert. *Nguyen*, 100 F.3d at 1467. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.

"In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate between periods of sitting and standing." SSR 83-12, 1983 WL 31253, at *4. "In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base." *Id.* Additionally, "[w]hen there is an apparent unresolved conflict between [vocational expert] or [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] or [vocational specialist]." SSR 00-4p, 2000 WL 1898704, at *2. However, where the DOT is "silent on whether the jobs in question allow for a sit/stand option," there is no conflict with a vocational expert's testimony that a claimant can perform a job with a sit/stand option. *Dewey v. Colvin*, 650 F. App'x 512, 514 (9th Cir. 2016) (unpublished); *see also Meyer v. Astrue*, No. CV 12-89-M-DLC-JCL, 2013 WL 1615893, at *7-*8 (D. Mont. Feb. 22, 2013) (SSR 00-4p satisfied where DOT did not address sit/stand option and

ALJ consulted vocational expert about limitation of claimant's ability to sit or stand pursuant to SSR 83-12).

Here, Plaintiff asserts the ALJ erred by failing to resolve a conflict between the vocational expert's testimony and the DOT. ECF No. 14 at 15. Specifically, Plaintiff argues the ALJ's determination that Plaintiff can perform modified light work is not supported by substantial evidence based upon Plaintiff's need to change positions once an hour. ECF No. 14 at 15-16; Tr. 18. The ALJ consulted the vocational expert, who testified that an individual with Plaintiff's RFC would be capable of performing the jobs of mail clerk, small parts assembler, and office cleaner I. Tr. 51. The DOT is silent as to whether the three jobs identified by the vocational expert allow for a sit/stand option. DOT 222.687-022, *Routing Clerk*, 1991 WL 672133; DOT 706.684-022, *Assembler, Small Products I*, 1991 WL 679050; DOT 323.687-014, *Cleaner, Housekeeping*, 1991 WL 672783. Therefore, there was no conflict for the ALJ to resolve. The ALJ satisfied SSR 83-12 by seeking the testimony of a vocational expert. SSR 83-12, 1983 WL 31253, at *4.

Even if there had been an apparent conflict, the vocational expert testified based on her professional experience, stating that her testimony about each identified job was "based on [her] experience in assisting and observing individuals, actually doing this job." Tr. 51-54. She testified that the mail clerk position selected for Plaintiff allowed employees the "opportunity to sit, stand, and move around, while they're performing this job," resolving any apparent conflict with Plaintiff's need to change positions once an hour. Tr. 51. The ALJ did not err by relying on the vocational expert's testimony at step five.

Plaintiff also argues that the ALJ erred by failing to ask the vocational expert if her testimony was consistent with the DOT. ECF No. 14 at 15; SSR 00-4p, 2000 WL 1898704. SSR 00-4p imposes on the ALJ "an affirmative responsibility to ask about any possible conflict between that [vocational expert] or [vocational specialist] evidence and information provided in the DOT." SSR 00-4p, 2000 WL

1898704, at *4.  Here, although the ALJ stated in the decision, "Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the [DOT]," a review of the vocational expert's testimony reveals that the ALJ failed to affirmatively ask the expert whether there was a conflict.  Tr. 23, 49-55.  The ALJ erred by failing to ask the vocational expert if her testimony was consistent with the DOT.

An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination."  *Stout*, 454 F.3d at 1055.  Although the ALJ erred in failing to ask the vocational expert whether her testimony was consistent with the DOT, the error was harmless.  Plaintiff's ability to perform the duties of mail clerk (695,000 jobs available in the U.S.), small parts assembler (241,000 jobs available in the U.S), and office cleaner I (434,000 jobs available in the U.S.) is sufficient to establish that Plaintiff can perform work which exists in significant numbers in the national economy.  Tr. 51.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision should be affirmed.  Therefore, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.**

DATED April 2, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE